FILED
2022 Jun-21  AM 08:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KRISTIE WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE BOARD OF TRUSTEES OF** | ) | **JURY DEMAND** |
| **THE UNIVERSITY OF ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## COMPLAINT

---

### I. JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4) and 28 U.S.C. § 2201 and 2202. This is a suit authorized and instituted pursuant to the Family Medical Leave Act ("FMLA"). The jurisdiction of this court is invoked to secure protection for and to redress the deprivation of rights secured by the Family and Medical Leave Act of 1993 providing injunctive and other relief against violations of the FMLA in employment.

## II.  PARTIES

2.      Plaintiff, Kristie Williams ("Plaintiff" or "Williams"), is a female citizen of the United States and is a resident of Jefferson County Alabama.

4.      Defendant, The Board of Trustees at The University of Alabama, ("Defendant" or "UAB"), is a recipient of federal funding and is an employer pursuant to the FMLA.  At all times relevant to this action, Defendant has maintained and operated a business in Alabama. Defendant is engaged in an industry affecting commerce, an employer within the meaning of the FMLA, and employs fifty (50) or more employees within a seventy-five (75) mile radius of where it employed Plaintiff.

## III.  ADMINISTRATIVE PROCEDURES

3.      Plaintiff brings this action for the unlawful employment practices and acts of intentional FMLA violations by her employer, Defendant.

4.      This action seeks to redress unlawful employment practices resulting from the acts of Defendant, their agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a habit and/or practice of

discriminating against and/or retaliating against the Plaintiff and others similarly situated on account of FMLA violations.

5.      Administrative prerequisites for filing have been satisfied, and Plaintiff is entitled to bring this action.

## VI.  STATEMENT OF PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

6.      Williams began working for UAB in or around 2002 as a Research Associate.

7.      In or around March 2020, Williams was promoted to Program Director-Grants Administration-Research Department of Medicine in Clinical Immunology and Rheumatology.

8.      As a condition of the promotion, Williams was placed on a probationary period of ninety (90) days.

9.      In 2020, Williams' daughter was stationed in Hawaii while serving in the United States Marine Corps.

10.     In or around May 2, 2020, Williams' daughter was sexually assaulted by a superior officer.

11.     Williams immediately began the process seeking approval for FMLA leave from UAB to fly to Hawaii and care for her daughter.

12.     On May 7, 2020, Williams completed a "Military Family Medical Leave of Absence Request Form", provided by UAB in which she requested continuous leave.

13.     In or around May 12, 2020, Williams left for Hawaii to care for her daughter.

14.     For five (5) days, between May 12, 2020 through May 20, 2020, Williams continued to work because she had not yet been approved by UAB for FMLA leave.

15.     On May 18, 2020, an email between Chelsea Burks ("Burks") and Williams, reconfirms the agreement that Williams would work until her FMLA leave was approved. Per Burks, "If you would not mind, please keep track of the time that you are working. This is not to judge how much you are working, but will help us make sure you are compensated appropriately in case the leave group doesn't approve your request".

16.     In or around May 18, 2020, Williams informed the Defendant that she was not in a good place and a "bit of a basket case" from working and caring for her daughter in Hawaii.

17.     On May 20, 2020, UAB approved Williams for Military Qualifying Exigency Leave pursuant to the FMLA through June 22, 2020.

18.     On May 20, 2020, Williams received emails about scheduled Zoom calls with Doug Bentley ("Bentley"), Division Administrator Lead.

19.     On May 21, 2020, Williams emailed Burks in Human Resources, informing her that she had been approved for FMLA leave.

20.     On May 22, 2020, Burks replied to Williams email stating, "Hi Kristie! I am working on a plan and will be in touch as soon as possible."

21.     A few days after Williams was granted leave, she emailed Burks and Bentley, asking if she should transfer her pending work assignments to another employee while on FMLA leave.

22.     Williams never received a response from Burks or Bentley.

23.     On May 26, 2020, Williams emailed Burks to inform her that she was still working on grants that were being assigned to her on FMLA leave.

24.     On May 28, 2020, Williams informed the Defendant that she felt like she was hurting (and not helping) UAB because she was required to work while on FMLA leave.

25.     While on continuous FMLA leave, Williams was constantly receiving emails from her UAB co-workers, the head of her division, and her immediate supervisor.

26.     Williams received over 600 emails while she was on FMLA leave at UAB.

27.     These emails consisted of asking Williams for information and requiring her to work on projects while trying to help her daughter through a traumatic sexual assault.

28.     Williams stated several times to UAB employees via email that she was on FMLA leave and did not feel like she should be working.

29.     On May 30, 2020, Williams ninety (90) day probationary period ended.

30.     In or around June 12, 2020 and during Williams' FMLA leave, Bentley and Burks had a telephone conversation with Williams that was followed-up by a letter.

31.     In these communications Bentley and Burks told Williams that her ninety (90) day probationary period was being extended until August 28, 2020.

32.     In or around June 12, 2020 and during Williams' FMLA leave, UAB disciplined Williams for poor work performance.

33.     Bentley's purported reasons for the extensions were that the "COVID-19 pandemic" limited the department's ability to evaluate Williams performance since most work was done remotely.

34.    However, Williams was not supposed to be "working remotely" due to COVID-19, she was supposed to be on continuous FMLA leave.

35.    Burks and Bentley criticized the quality and performance of Williams work while being on FMLA leave and placed her on three (3) "development plans".

36.    These development plans suggested that Williams improve her, "attention to detail, communication, and responding quickly and accurately to the Division's faculty and staff."

37.    All three (3) developmental plans and the second ninety (90) day probationary period all occurred during Williams' continuous FMLA leave.

38.    Williams complained to Human Resources that UAB told her that she would be given a plan to the transfer of her assignments to a co-worker while on FMLA leave, but that the plan never came to fruition.

39.    Williams also complained to UAB that she: 1) felt pressured to work while on continuous FMLA leave; 2) should not have received any developmental plans while on FMLA leave; and 3) should not have been placed on a second probationary status while on FMLA leave.

40.    Williams told Donresa Craig ("Craig"), the HR employee who approved her FMLA leave, that her FMLA leave was not intermittent.

41.     Williams also asked Craig if her FMLA status was ever changed without her knowledge.

42.     Williams never heard a response from Craig concerning her FMLA status.

43.     Shortly after the implementation of the Development Plans, UAB hired two (2) employees to, "help lead or complete many of Williams day-to-day duties in order to allow her to focus on the action plans."

44.     In or around June 15, 2020, Williams had a phone call with UAB James Freeman ("Freeman"), in Employee Relations to discuss her FLMA leave.

45.     Williams told Freeman that UAB mishandled her FMLA leave.

46.     Freeman told Williams "we don't want to go there" (FMLA leave).

47.     Over the next several weeks Williams had several phone calls with UAB Employee Relations personnel and the School of Medicine HR liaison.

48.     The calls pertained to mediating a resolution between Williams and the Division.

49.     In or around June 17, 2020, Bentley told Williams that weekly zoom calls should be implemented to track her progress.

50.    These calls were never set up by Williams' division.

51.    Williams reached out to the Division Director, Dr. Lou Bridges ("Bridges") to have a conversation because she believed the information given to leadership was inaccurate.

52.    Dr. Bridges declined to speak with Williams.

53.    Then, Williams reached out to the new Division Director in July of 2020, Dr. Saag.

54.    Dr. Saag declined to speak with Williams.

55.    Then, Williams had a conversation with UAB Employee Relations and the School of Medicine HR liaison, Tammie Collins ("Collins"). Collins claimed that Williams had agreed to work while she was on FMLA leave.

56.    Williams said that she could provide email documentation to show that she did not want to work while on FMLA leave.

57.    Williams was informed that the Defendant had seen all the emails and did not need any more information.

58.    Defendant kept telling Williams that she was at fault and to complete the corrective action plan with her department.

59.    By June 26, 2020, Williams had completed two of the three development plans.

60.    Williams completed all the corrective actions plan in a timely manner and ahead of schedule.

61.    Since in or around the time Williams returned from FMLA leave until August 1, 2020, the Defendant had her work on the corrective action plans.

62.    In or around August 1, 2020, the Defendant allowed Williams to return to her regular work.

63.    In around August 1, 2020, Williams, Bentley, and Dr. Saag had a telephone conversation.

64.    Dr. Saag informed Williams that she would have to make a "360 degree" turn in her work performance in thirty (30) days to remain in her position.

65.    Dr. Saag told Williams that he did not believe she could accomplish this "360 degree" task.'

66.    Williams strongly believed that UAB was going to terminate her employment.

67.    On around August 15, 2020, in lieu of being terminated, which her division made clear was imminent, Williams was constructively discharged from her position at UAB.

10

68.    In or around August 31, 2020, Williams worked her last day at UAB.

## V.    STATEMENT OF PLAINTIFF'S CLAIMS
## <u>COUNT ONE</u>
## FMLA – INTERFERENCE

69.    In or around May 2, 2020, Williams' daughter was sexually assaulted while in the Marines by a superior officer.

70.    At the time of the sexual assault, Williams' daughter was stationed in Hawaii.

71.    Williams immediately began the process seeking approval for FMLA leave from UAB to fly to Hawaii and care for her daughter.

72.    On May 7, 2020, Williams completed a "Military Family Medical Leave of Absence Request Form", provided by UAB in which she requested continuous leave.

73.    In or around May 12, 2020, Williams left for Hawaii to care for her daughter.

74.    On May 20, 2020, UAB approved Williams for Military Qualifying Exigency Leave pursuant to the FMLA through June 22, 2020.

75.    On May 20, 2020, Williams received emails about scheduled Zoom calls with Bentley, the Division Administrator Lead.

76.    On May 21, 2020, Williams emailed Burks in Human Resources, informing her that she had been approved for FMLA leave.

77.    On May 22, 2020, Burks replied to Williams email stating, "Hi Kristie! I am working on a plan and will be in touch as soon as possible."

78.    A few days after Williams was granted leave, she emailed Burks and Bentley, asking if she should transfer her pending work assignments to another employee while on FMLA leave.

79.    Williams never received a response from Burks or Bentley.

80.    On May 26, 2020, Williams emailed Burks to inform her that she was still working on grants that were being assigned to her on FMLA leave.

81.    On May 28, 2020, Williams informed the Defendant that she felt like she was hurting (and not helping) UAB because she was required to work while on FMLA leave.

82.    While on continuous FMLA leave, Williams was constantly receiving emails from her UAB co-workers, the head of her division, and her immediate supervisor.

83.    Williams received over 600 emails while she was on FMLA leave at UAB.

84.    These emails consisted of asking Williams for information and requiring her to work on projects while trying to help her daughter through a traumatic sexual assault.

85.    Williams stated several times to UAB employees via email that she was on FMLA leave and did not feel like she should be working.

86.    On May 30, 2020, Williams' ninety (90) day probationary period ended.

87.    In or around June 12, 2020 and during Williams' FMLA leave, Bentley and Burks had a telephone conversation with Williams that was followed-up by a letter.

88.    In these communications, Bentley and Burks told Williams that her ninety (90) day probationary period was being extended until August 28, 2020.

89.    In or around June 12, 2020 and during Williams' FMLA leave, UAB disciplined Williams for poor work performance.

90.    Bentley's purported reasons for the extensions were that the "COVID-19 pandemic" limited the department's ability to evaluate Williams performance since most work was done remotely.

91.    However, Williams was not supposed to be "working remotely" due to COVID-19, she was supposed to be on continuous FMLA leave.

92.     Williams told Craig, the HR employee who approved her FMLA leave, that her FMLA leave was not intermittent.

93.     Williams also asked Craig if her FMLA status was ever changed without her knowledge.

94.     Williams never heard a response from Craig concerning her FMLA status.

95.     Plaintiff gave Defendant sufficient notice of her daughter's serious health conditions to allow Defendant to conclude that Plaintiff's leave may be protected by the FMLA.

96.     Defendant is an employer for the purposes of the FMLA.

97.     Defendant employed 50 or more employees within a 75-mile radius of where it employed Plaintiff for each working day, during each of 20 or more calendar workweeks in the current or preceding calendar year.

98.     In May of 2020, Plaintiff had worked more than 1,250 hours for the Defendant in the prior 12 months.

99.     Defendant did not reinstate Plaintiff to her same or equivalent position.

100.    At the time of the actions relevant to this lawsuit, Defendant had knowledge of the FMLA and its legal requirements.

101.    Defendant's actions were willful.

102.    Defendant's interference with Plaintiff's FMLA rights injured the Plaintiff.

103.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

104.    Defendant's illegal discriminatory and adverse actions injured Plaintiff.

105.    Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

106.    As a result of Defendant's willful and unlawful violations of the FMLA, as herein described, Plaintiff has suffered lost wages, salary, loss of career, employment benefits and/or other compensation.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the Family Medical Leave Act;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the Family Medical Leave

Act;

      c.    Grant Plaintiff an Order requiring the Defendant to make her whole by granting appropriate declaratory relief, lost wages, backpay, liquidated damages, attorney fees, expenses, costs; and

      d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT TWO
## FMLA – RETALIATION

107.   In or around May 2, 2020, Williams' daughter was sexually assaulted while in the Marines by a superior officer.

108.   At the time of the sexual assault, Williams' daughter was stationed in Hawaii.

109.   On May 7, 2020, Williams completed a "Military Family Medical Leave of Absence Request Form", provided by UAB in which she requested continuous leave.

110.   In or around May 12, 2020, Williams left for Hawaii to care for her daughter.

111.   Plaintiff gave Defendant sufficient notice of her daughter's serious health conditions to allow Defendant to conclude that Plaintiff's leave may be protected by the FMLA.

112.    Defendant is an employer for the purposes of the FMLA.

113.    Defendant employed 50 or more employees within a 75-mile radius of where it employed Plaintiff for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

114.    In May of 2020, Plaintiff had worked more than 1,250 hours for the Defendant in the prior 12 months.

115.    On May 2, 2020, Plaintiff was eligible for FMLA leave.

116.    In May 7, 2020, Plaintiff asked for FMLA leave.

117.    On May 20, 2020, UAB approved Williams for Military Qualifying Exigency Leave pursuant to the FMLA through June 22, 2020.

118.    While on continuous FMLA leave, Williams was constantly receiving emails from her UAB co-workers, the head of her division, and her immediate supervisor.

119.    Williams received over 600 emails while she was on FMLA leave at UAB.

120.    These emails consisted of asking Williams for information and requiring her to work on projects while trying to help her daughter through a traumatic sexual assault.

121.    Williams stated several times via email to UAB employees that she was on FMLA leave and did not feel like she should be working.

122.   On May 30, 2020, Williams ninety (90) day probationary period ended.

123.   In or around June 12, 2020 and during Williams' FMLA leave, Bentley and Burks informed Williams had a telephone conversation with Williams that was followed-up by a letter.

124.   In these communications Bentley and Burks told Williams that her ninety (90) day probationary period was being extended until August 28, 2020.

125.   In or around June 12, 2020 and during Williams' FMLA leave, UAB disciplined Williams for poor work performance.

126.   Bentley's purported reasons for the extensions were that the "COVID-19 pandemic" limited the department's ability to evaluate Williams performance since most work was done remotely.

127.   However, Williams was not supposed to be "working remotely" due to COVID-19, she was supposed to be on continuous FMLA leave.

128.   Burks and Bentley criticized the quality and performance of Williams work while being on FMLA leave and placed her on three (3) "development plans".

129.   These development plans suggested that Williams improve her, "attention to detail, communication, and responding quickly and accurately to the Division's faculty and staff."

130.   All three (3) developmental plans and the second ninety (90) day probationary period all occurred during Williams' continuous FMLA leave.

131.   Williams complained to Human Resources that UAB told her that she would be given a plan to the transfer of her assignments to a co-worker while on FMLA leave, but that the plan never came to fruition.

132.   Williams also complained to UAB that she: 1) felt pressured to work while on continuous FMLA leave; 2) should not have received any developmental plans while on FMLA leave; and 3) should not have been placed on a second probationary status while on FMLA leave.

133.   Williams told Craig, the HR employee who approved her FMLA leave, that her FMLA leave was not intermittent.

134.   Williams also asked Craig if her FMLA status was ever changed without her knowledge.

135.   Williams never heard a response from Craig concerning her FMLA status.

136.   Shortly after the implementation of the Development Plans, UAB hired two (2) employees to, "help lead or complete many of Williams day-to-day duties in order to allow her to focus on the action plans."

137.   In or around June 15, 2020, Williams had a phone call with UAB's Freeman in Employee Relations to discuss her FLMA leave.

138.   Williams told Freeman that UAB mishandled her FMLA leave.

139.   Freeman told Williams "we don't want to go there" (FMLA leave).

140.   Over the next several weeks Williams had several phone calls with UAB Employee Relations personnel and the School of Medicine HR liaison.

141.   The calls pertained to mediating a resolution between Williams and the Division.

142.   In or around June 17, 2020, Bentley told Williams that weekly Zoom calls should be implemented to track her progress.

143.   These calls where never set up by Williams' division.

144.   Williams reached out to the Division Director, Dr. Bridges to have a conversation because she believed the information given to leadership was inaccurate.

145.   Dr. Bridges declined to speak with Williams.

146.    Then, Williams reached out to the new Division Director in July of 2020, Dr. Saag.

147.    Dr. Saag declined to speak with Williams.

148.    Then, Williams had a conversation with UAB Employee Relations and the School of Medicine HR liaison, Collins. Collins claimed that Williams had agreed to work while she was on FMLA leave.

149.    Williams said that she could provide email documentation to show that she did not want to work while on FMLA leave.

150.    Williams was informed that the Defendant had seen all the emails and did not need any more information.

151.    Defendant kept telling Williams that she was at fault and to complete the corrective action plan with her department.

152.    By June 26, 2020, Williams had completed two of the three development plans.

153.    Williams completed all the corrective actions plan in a timely manner and ahead of schedule.

154.    Since in or around the time Williams returned from FMLA leave until August 1, 2020, the Defendant had her work on the corrective action plans.

155.   In or around August 1, 2020, the Defendant allowed Williams to return to her regular work.

156.   In around August 1, 2020, Williams, Bentley, and Dr. Saag had a telephone conversation.

157.   Dr. Saag informed Williams that she would have to make a "360 degree" turn in her work performance in thirty (30) days to remain in her position.

158.   Dr. Saag told Williams that he did not believe she could accomplish this "360 degree" task.

159.   Based on the facts, Williams strongly believed that UAB was going to terminate her employment.

160.   On or around August 15, 2020, in lieu of being terminated, which her division made clear was imminent, Williams was constructively discharged from her position at UAB.

161.   In or around August 31, 2020, Williams worked her last day at UAB.

162.   At the time of the actions relevant to this lawsuit, Defendant had knowledge of the FMLA and its legal requirements.

163.   Defendant's actions were willful.

164.   Other employees had alleged Defendant has violated their

rights as secured by the FMLA.

165.    Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

166.    Defendant's illegal discriminatory and adverse actions injured Plaintiff.

167.    Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

168.    As a proximate result of Defendant's willful and unlawful violations of the FMLA, as herein described, Plaintiff has suffered lost wages, salary, loss of career, employment benefits and/or other compensation.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the Family Medical Leave Act;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the Family Medical Leave

Act;

     c.     Grant Plaintiff an Order requiring the Defendant to make her whole by granting appropriate declaratory relief, lost wages, backpay, liquidated damages, attorney fees, expenses, costs; and

     d.     Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.


**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**


                                        */s/ Blake C. Edwards*
                                        State Bar ID No: ASB-5200-T60B

                                        */s/ Nicole D. Edwards*
                                        State Bar ID No: ASB-4832-B19D
                                        *Attorneys for Plaintiff*


**OF COUNSEL:**
EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane, Suite C
Bessemer, Alabama 35022
Tel: (205) 549-1379
E-mail: blake@edwardsattys.com
         nicole@edwardsattys.com


**PLAINTIFF'S ADDRESS**:
c/o EDWARDS & EDWARDS ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane, Suite C
Bessemer, Alabama 35022

**<u>PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:</u>**

The Board of Trustees at The University of Alabama
c/o Secretary Mike Foley
500 University Blvd. East
Tuscaloosa, AL 35401